**Daniel Leslie CORLISS, Appellant,**

v.

**Vivian Marie Corliss SMITH, Appellee.**

**No. 1056.**

Court of Civil Appeals of Texas, Tyler.

Dec. 8, 1977.

**168**

William F. Neal, Law Offices of Fred E. Time, Dallas, for appellant.

Charles S. Fuquay, Dallas, for appellee.

MOORE, Justice.

This is a domestic relations case involving the application of the newly-enacted long-arm provision of the Texas Family Code Ann. sec. 11.051 (Supp.1976). Plaintiff, Daniel Corliss, a resident of Dallas County, Texas, filed suit in the Domestic Relations Court in Dallas County, seeking a modification of the court's 1972 decree of divorce specifying visitation privileges "at reasonable times" with his two children, who have since resided with the defendant, Vivian Corliss Smith, their mother, in the State of Nebraska. Service of citation was perfected upon the defendant, Mrs. Smith, in the State of Nebraska by personal service pursuant to the provisions of sec. 11.051 of the Texas Family Code and Rule 108, Tex.R. Civ.P. Thereafter Mrs. Smith, as managing conservator of the children, filed a special appearance contesting the in personam jurisdiction as well as the subject matter jurisdiction of the Texas Court. After a hearing, the trial court ruled that Mrs. Smith was not amenable to suit in the State of

Texas and accordingly granted her special appearance and dismissed the plaintiff's suit for want of jurisdiction. Plaintiff duly perfected this appeal.

We affirm.

The cause was submitted to the trial court upon an agreed stipulation of facts, which reads as follows:

"I.

"DANIEL LESLIE CORLISS and VIVIAN MARIE CORLISS SMITH were legally married on June 23, 1962, in Ayer, Massachusetts. They separated from one another on September 1, 1972, and a petition for divorce was filed by VIVIAN MARIE CORLISS on September 5, 1972, in the Domestic Relations Court of Dallas County, Texas. Prior to the parties separation they had resided and lived in Dallas since July of 1965. During the marriage the parties had born to them the two children which are the subject of this suit:

Stephen Joseph Corliss, a male, born in Dallas, Texas, on November 7, 1966; Melanie Ann Corliss, a female, born in Dallas, Texas, on August 6, 1970.

Both of the children were conceived while the parties were residents of Dallas, Texas.

II.

"On November 27, 1972, trial was held before the Honorable Beth Wright, Judge of the Domestic Relations Court of Dallas County, Texas, on the divorce petition filed by Vivian Marie Corliss. Judgment of divorce was entered on November 29, 1972 and no appeal of that judgment was pursued. A true and correct copy of said Judgment is attached hereto as Exhibit 'A'.

"On or about December 27, 1972, Vivian Marie Corliss married one William Smith, and is presently married to the same William Smith. Daniel Leslie Corliss married Sara Fern Riley on December 15, 1973, and is presently married to the same woman.

III.

"Vivian Marie Corliss Smith, and the children Stephen Joseph Corliss and Melanie Ann Corliss, left the State of Texas and moved to the State of Nebraska on or about November 27, 1972, where they established a permanent domicile. Neither Respondent or either of the children have visited, resided, lived in, or been physically present within the State of Texas since that date. As a result of disputes arising out of the November 27, 1972 divorce judgment, Vivian Marie Corliss Smith remained the record owner of certain real property located in Dallas County, Texas, until about August 19, 1975, when the 95th Judicial District Court entered a default judgment against Vivian Marie Corliss Smith, her husband William Smith, and Thomas S. Sligh, declaring Daniel Leslie Corliss to be the sole owner of that certain property in Dallas County, Texas. No appeal has ever been filed from that judgment. True and correct copies of Plaintiff's Original Petition, Plaintiff's First Amended Original Petition, and the Judgment in this cause are attached hereto as Exhibits "B", "C" and "D" respectively.

IV.

"Daniel Leslie Corliss was ordered in the initial Divorce Judgment to pay child support in the sum of $75.00 per month per child. He made payments under the Decree in 1972, made no payments in calendar year 1973, and resumed payments in May, 1974, and has made payments every month thereafter, through the Dallas County Child Support Office, although such payments have been in the amount of $50.00, per month, per child, rather than the $75.00 per month, per child, as ordered.

"Daniel Leslie Corliss has neither visited, seen nor communicated orally or in writing with his children, except one time on April 12, 1974, since the children have resided in Nebraska. No other suit, other than the present case, has been filed or prosecuted in Texas concerning the children since the date of divorce.

V.

"By agreement of the parties, the Court has taken Judicial Notice of the

Statutes and case law of the State of Nebraska . . . ."

In his petition filed on December 15, 1976, the father sought visitation privileges and access to the children. He requested (1) possessory conservatorship for various periods of time on alternate major holidays such as Easter, Memorial Day, Thanksgiving and Christmas, (2) Father's Day, (3) two months during the summer, (4) alternate weekends of each month; and (5) during the children's spring vacation from school. In view of the extensive visitation privileges requested, we think the plaintiff's pleadings amounted to a request for divided custody rather than a mere change in visitation privileges. See *Huffman v. Huffman*, 408 S.W.2d 248 (Tex.Civ.App.—Dallas 1966, no writ); *Glasgow v. Hurley*, 333 S.W.2d 658 (Tex.Civ.App.—Dallas 1960, no writ).

No contention is made that jurisdiction can be had pursuant to sec. 11.05 of the Family Code, which authorizes the court which once acquired jurisdiction of a suit affecting the parent-child relationship to retain continuing jurisdiction of all matters in connection with the child. Rather, it is both parties' position that the only applicable jurisdictional statute involved is Tex. Fam. Code Ann. sec. 11.051 (Supp.1976), the newly-enacted parent-child long-arm statute. On this appeal the father contends that the trial court erred in dismissing the cause for want of jurisdiction, because jurisdiction may be had under the provisions of sec. 11.051, which provides:

"In a suit affecting the parent-child relationship, the court may exercise personal jurisdiction over a person on whom service of citation is required or over the person's personal representative, although the person is not a resident or domiciliary of this state, if:

(1) the child was conceived in this state and the person on whom service is required is a parent or an alleged or probable father of the child;

(2) the child resides in this state, as defined by Section 11.04 of this code, as a result of the acts or directives or with the approval of the person on whom service is required;

(3) the person on whom service is required has resided with the child in this state; or

(4) notwithstanding Subdivisions (1), (2), or (3) above, there is any basis consistent with the constitutions of this state or the United States for the exercise of the personal jurisdiction."

No state other than Texas has yet adopted a statute comparable to Section 11.051. Under the literal terms of this statute personal jurisdiction may now be exercised in this state over a non-resident in a parent-child suit when one of three specific fact situations mentioned in the statute has been established. In addition, under subsection 4 jurisdiction may also be exercised provided the state and federal constitutions are not offended.

The statute embraces cases involving child conservatorships as well as cases involving support. We have found no Texas case discussing the constitutional limitations of the statute in a child custody suit; however, we have found one Texas case holding that application of the statute did not offend due process and therefore conferred jurisdiction on a Texas court in a child support case. *Zeisler v. Zeisler*, 553 S.W.2d 927 (Tex.Civ.App.—Dallas 1977, writ dism'd). The court in that case, however, was careful to point out that its holding was confined to a situation involving child support and that different considerations would likely be involved in conservatorship or custody cases. We agree with this observation.

The question presented is whether, under the stipulated facts, the non-resident mother who has been appointed managing conservator of the children by the 1972 Texas divorce decree is constitutionally amenable to Texas process served outside the State in a suit by the father seeking to change the terms of the decree relating to his possessory conservatorship.

Subject to unconstitutionality on its face, Section 11.051, supra, clearly provides the statutory vehicle for jurisdiction over

the defendant even though she has been a resident of the State of Nebraska since November 27, 1972. Amended Rule 108, Tex.R.Civ.P., similarly permits process to be served outside of Texas in cases such as this one. The factual basis for the plaintiff's reliance on the long-arm statute is to be found in the Agreed Stipulation of Facts. It is undisputed that the situational requirements of subsections 1 and 3 of the statute have been fulfilled. Proof of such facts standing alone, however, is not dispositive. Left to be determined is whether such facts are constitutionally sufficient to satisfy traditional notions of fair play and substantial justice.[1] Texas courts have refused to exercise jurisdiction pursuant to a long-arm statute when to do so would violate due process. See *U-Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760 (Tex.1977). Neither do Texas courts automatically assume jurisdiction, though it may literally exist, when practical considerations warrant otherwise. *Bevan v. Bevan*, 283 S.W.2d 305 (Tex.Civ. App.—San Antonio 1955, writ ref'd n.r.e.).

■ It is well settled that due process requires that the non-resident defendant have certain minimum contacts with the forum state out of which the cause of action arose. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The foregoing cases have established four criteria in determining whether traditional notions of fair play and substantial justice have been met: (1) the extent of defendant's contacts with the forum state; (2) the interest of the parties in having a particular forum settle their dispute; (3) the interest of the forum state in providing an effective means of redress for its residents; and (4) the convenience of the forum, including its access to witnesses and evidence. In dis-

cussing the various due process requirements, the court in *O'Brien v. Lanpar Co.*, 399 S.W.2d 340 (Tex.1966), held:

" . . . the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation." 399 S.W.2d at 342.

■ In the case of *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974), the court observed that the decisions have established a dual test for determination whether a court may exercise its jurisdiction without depriving a non-resident defendant of due process of law. The court, at 494, said: "First, there must be some minimum contact with the state which results from an affirmative act of the defendant. Secondly, it must be fair and reasonable to require the defendant to come into the state and defend the action." This language in the *Cousteau* opinion was adopted by the Supreme Court of this state in *U-Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977). While the latter case involved the general Texas long-arm statute, Article 2031b, Tex.Rev.Civ. Stat.Ann., we think the same constitutional considerations are applicable here.

■ Within the foregoing guidelines, the concept of extraterritorial jurisdiction over the person has been pushed to greater limits in contract and tort cases than in domestic relations litigation. *Zeisler v. Zeisler*, supra. In a suit such as this, however, in which child custody alone is involved, a state cannot effectively extend its power to the full limits of the due process clause, for the full faith and credit clause, which would command enforcement of a

---

1. This problem has been ably discussed in Sampson, *Jurisdiction in Divorce & Conservatorship Suits*, 8 Tex.Tech L.Rev. 159 (1976), and Bernard & Johnson, *The Jurisdiction of* *Texas Courts in Interstate Child Custody Disputes: A Functional Approach*, 54 Texas L.Rev. 1008 (1976). Both texts have been heavily relied upon in this decision.

tort or contract judgment, may not similarly protect a custody decree since it may be enforced only by a court of the state in which the child resides. See Bernard & Johnson, 54 Texas L.Rev. 1008, at 1024–5, supra, note 1. So, cases in tort or contract, although offering some guidelines, do not offer a panacea to the problem due to the fact that both the due process and the full faith and credit clauses effectively circumscribe a state's jurisdictional power over child custody. Past decisions defining the extraterritorial jurisdiction of the courts in custody cases likewise offer little help in determining the limits of constitutional due process under the statute in question.

A brief examination of the statute indicates that, if applied literally in every instance, it would often offend due process as it would give Texas jurisdiction over many custodial disputes in which the state has little, if no, interest. For example, the statute has no internal statute of limitations. Since one of the grounds for jurisdiction provided in the statute is that the person over whom jurisdiction is sought has resided with the child in this state, a literal reading would indicate that a person who has at one time resided with a child in this state can be subjected to Texas jurisdiction in a custodial dispute even though he or she may have been gone from Texas for three, five or even fifteen years.

In determining whether due process requirements are met sufficient to confer jurisdiction, the factual context surrounding the entire situation is crucial. One important consideration in determining whether due process requirements are met is the interest of the forum state vis-a-vis the interest of the foreign state. While Texas, under the facts in the present case, has an interest in providing the father, its resident, with an effective means of redress, this interest must be balanced along with others. The paramount consideration in a case involving the custody of a child is what would be in the best interests and welfare of the child. When the child has acquired a domicile in a foreign jurisdiction, the domicile of the child will be considered along with other facts in determining whether Texas courts will or should exercise jurisdiction. *Worden v. Worden*, 148 Tex. 356, 224 S.W.2d 187, 190 (1949). "The jurisdiction of a state to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless." *Finlay v. Finlay*, 240 N.Y. 429, 148 N.E. 624, 625 (1925). In view of the fact that both the children and their mother, the managing conservator, have resided in the State of Nebraska for a period of over three years immediately prior to the filing of this suit, the interests of Nebraska in protecting the welfare of the children would seem to outweigh the interests of Texas in protecting the possessory conservatorship of the father.

Probably the most important factor to be considered in determining the question of jurisdiction is the ability of the forum state to reach a result which will conform to the children's best interests. Ordinarily, the courts of the domiciliary state are in a better position to pass intelligently on the matter of the child's welfare. *Wicks v. Cox*, 146 Tex. 489, 208 S.W.2d 876, 878 (1948). Since the case will ultimately be decided on the basis of the evidence, the question becomes one of determining in which court the evidence would most likely be better developed. Intertwined with this question is the issue of relative convenience of the parties and the witnesses. In the usual situation, the witnesses would include the parents, the children, domestic relation counselors (including, perhaps, professional court personnel who have met with the parents and children), the children's teachers, doctors, ministers, neighbors and other persons sufficiently acquainted with the children to offer testimony as to what would be in the children's best interests. The factual situation must be such that it would be fair and reasonable to require the defendant to come into the state and defend the action. *U-Anchor Advertising, Inc. v. Burt*, supra; *Product Promotions, Inc. v. Cousteau*, supra.

■ Upon applying the foregoing principles of law to the facts in the present case, we do not believe that it would be either fair or reasonable to require the defendants to come into this state and defend the action. Both Mrs. Smith and the children have resided in Nebraska for a substantial period of time. Necessarily, the vast majority of the witnesses who could testify as to the welfare and best interests of the children are in that state. Therefore it would be inconvenient, if not impossible, to develop properly the issue of custody in the Texas court. While a trial in Texas would be convenient to the father, it would be extremely expensive and inconvenient to the mother, especially in view of the fact that the Texas court has no subpoena power to compel the attendance of the witnesses residing in Nebraska. For this reason, as well as our conclusion that the State of Nebraska would have a greater interest in the matter, we hold that the defendant would not be afforded due process of law if required to defend the plaintiff's suit in Texas.

■ While the long-arm statute in question, sec. 11.051, literally allows for jurisdiction to be had no matter how long the parent and child had been absent from the state, we do not believe that the legislature intended the statute to confer jurisdiction after the parent and child had been absent for a substantial period of time. We take note that in an intrastate context sec. 11.06 of the Texas Family Code provides that the original court is required to transfer jurisdiction if the child has principally resided in another county of this state for six months or more. The legislature in enacting sec. 11.06 apparently realized that, after the absence of the child from the county for six months or more, the original court would probably no longer constitute a convenient and/or competent forum to adjudicate a claim affecting the parent-child relationship and that the interests of the new forum in protecting the welfare of the child would likely outweigh those of the original forum. We see no reason why the same considerations should not be applied in an interstate context involving sec. 11.051. Therefore, in determining whether to assert jurisdiction, when the undisputed proof shows that the child and the managing conservator have resided in a foreign state for six months or more before the suit was filed, we think a presumption arises that the Texas courts no longer constitute convenient and/or competent forums to adjudicate claims affecting the parent-child relationship and have lesser interests in protecting the welfare of the child than the foreign state, and are consequently unwarranted in asserting jurisdiction in the absence of sufficient proof to overcome the presumption. Upon applying this presumption to the facts in this case, we believe the trial court was correct in refusing to assume jurisdiction over the cause, as we find nothing in the stipulation of facts which would tend to rebut this presumption.

■ Aside from the foregoing considerations, we think the trial court's judgment may also be sustained because any judgment rendered by the Texas court would not be accorded full faith and credit under Nebraska law. Due to the fact that the questions of due process and extraterritorial recognition of decrees are so closely related, the trial court had a right to measure its ability to exercise custody jurisdiction over non-residents not only by the due process criteria but also by the respect a Texas judgment will likely command in Nebraska. That is to say, the court may take into consideration the probability of its judgment's being enforced in another jurisdiction. The court should not assume jurisdiction and render a judgment that will not be given full faith and credit. In this regard, the Supreme Court of Nebraska has held that when jurisdiction of a Nebraska court is invoked seeking enforcement of a child custody decision in another state, the child becomes a ward of the state and the issue of proof becomes "the welfare of the child." *Copple v. Copple*, 186 Neb. 696, 185 N.W.2d 846 (1971). The effect of such a doctrine is that the filing of a habeas corpus action in Nebraska causes a relitigation of the suit. See *Carner v. Anderson*, 191 Neb. 341, 215 N.W.2d 82 (1974); *Dallmann v.*

*Mehrer*, 192 Neb. 543, 222 N.W.2d 827 (1974). In view of the holdings of the Nebraska court, the assumption of jurisdiction and the rendition of a judgment by the Texas court would amount to nothing more than an exercise in futility. This fact was likely taken into account by the trial court, which took judicial notice of the statutes and case law of Nebraska. Therefore, for this additional reason, we think the trial court properly declined to assert jurisdiction of this cause.

Accordingly, the judgment of the trial court is affirmed.