Wylie Neal BUTLER, Appellant,

v.

Nancy Kay BUTLER, Appellee.

No. 8603.

Court of Civil Appeals of Texas,
Texarkana.

Dec. 27, 1978.

Rehearing Denied Feb. 13, 1979.

Shirley R. Levin, Levin, Weinburg & Levin, Dallas, Jerry L. Weinstein, Law Offices of Jerry L. Weinstein, Arlington, for appellant.

David B. Moseley, Jr., Moseley & Jones, Dallas, for appellee.

RAY, Justice.

This is a divorce case. Appellee (petitioner), Nancy Kay Butler, brought suit seeking a divorce from appellant (respondent), Wylie Neal Butler, and sought custody of their minor children. The trial court granted the divorce to Nancy Kay Butler and appointed her the managing conservator of the children and ordered Wylie Neal Butler to pay child support in the sum of $200.00 per month. Appellant has perfected his appeal and submits thirty points of error for our consideration.

The judgment of the trial court will be affirmed.

Appellant and appellee were married on December 30, 1961. Two children, Billy Joe Butler and Cynthia Kay Butler, were born in Texas during the marriage. In May of 1975, appellant and appellee separated and then reconciled briefly. On August 12, 1975, Wylie Neal Butler left his wife and moved to Louisiana. Mrs. Butler filed her petition for divorce in Dallas County on August 22, 1975.

When Wylie Neal Butler left, he took his minor daughter, Cynthia Kay, with him. Appellant never told his wife his new location or communicated any information to her concerning the well-being of Cynthia. Appellee was never able to obtain personal service upon her husband who always managed to elude service of process. She enlisted the services of the sheriff's departments of four different counties and parishes and hired a private investigator to locate her husband and daughter. In addition, Mrs. Butler used the Parent Locater Service of the Texas Department of Welfare to try to locate appellant. It was not until she was served with process in a lawsuit instituted

by Wylie Neal Butler in Bossier Parish, Louisiana, seeking separation from bed and board and custody of their minor daughter, that Nancy Kay Butler learned the location of her husband and daughter. She obtained a Texas temporary restraining order, hired another private investigator, and went to Louisiana to get temporary custody of her daughter. She was successful in gaining possession of Cynthia Kay while in Louisiana and has retained possession since that time.

On June 24, 1977, the trial court authorized substituted service of citation upon Wylie Neal Butler by delivering the citation to James B. Wells, his attorney of record in the Louisiana divorce proceeding by certified mail, return receipt requested. Service was had on June 27, 1977, and the return was filed with the district clerk of Dallas County on July 1, 1977.

On July 13, 1977, Nancy Kay Butler filed her answer in the Louisiana divorce proceedings.

Appellant Butler filed a special appearance in the Texas divorce proceeding on July 1, 1977, asserting that he was not amenable to process issued by the courts of this State. On September 9, 1977, a hearing was held and the trial court overruled appellant's objections to the jurisdiction of the Texas court. At the September 9 hearing, appellant's attorney introduced evidence of the pending lawsuit in Louisiana and argued that service on Wylie Neal Butler was not properly made. No evidence was offered that appellant was not amenable to the jurisdiction of the Texas court. By only raising the issue of defective service, appellant waived his special appearance. On the same day, the trial court, acting through a different judge, entered a decree of divorce, made Nancy Kay Butler the managing conservator of the minor children, ordered child support and entered a decree for attorney's fees in favor of appellee.

Appellant's main contentions are: (1) that the trial court did not have in personam jurisdiction over him; (2) that the manner of substituted service upon his attorney of record in the Louisiana divorce proceeding was improper; and, (3) the trial court could not immediately proceed to enter judgment against him.

Appellant asserts that the courts of this State lack in personam jurisdiction over him and are therefore unable to render a binding judgment against him. Jurisdiction over Wylie Neal Butler depends on the applicability of Sections 3.26 (Supp. 1978–79) and 11.051 (Supp. 1978–79), the long-arm provisions of the Texas Family Code, Section 3.26 provides that the trial court may exercise personal jurisdiction over the respondent, or the respondent's personal representative, although the respondent is not a resident or domiciliary of this State if: (1) this State is the last state in which marital cohabitation between petitioner and respondent occurred and the suit is commenced within two years after the date on which cohabitation ended; and further provides that a court acquiring jurisdiction under Section 3.26 also acquires jurisdiction in a suit affecting the parent-child relationship if Section 11.051 of the Texas Family Code is applicable. Sec. 11.051 provides the following:

"In a suit affecting the parent-child relationship, the court may exercise personal jurisdiction over a person on whom service of citation is required or over the person's personal representative, although the person is not a resident or domiciliary of this state, if:

(1) the child was conceived in this state and the person on whom service is required is a parent or an alleged or probable father of the child;

(2) the child resides in this state, as defined by Section 11.04 of this code, as a result of the acts or directives or with the approval of the person on whom service is required;

(3) the person on whom service is required has resided with the child in this state; or

(4) notwithstanding Subdivisions (1), (2), or (3) above, there is any basis consistent with the constitutions of this state or the United States for the exercise of the personal jurisdiction."

A divorce proceeding is a quasi in rem action. *Dosamantes v. Dosamantes,* 500 S.W.2d 233 (Tex.Civ.App. Texarkana 1973, writ dism'd). If a court has jurisdiction over the resident spouse, it may render a valid and binding divorce over the non-resident spouse after notice and hearing since it is not exercising personal jurisdiction, but is instead exercising jurisdiction over the subject matter, namely, the marital status of its citizens. However, before judgment affecting the parent-child relationship of the non-resident defendant will be entitled to full faith and credit in a foreign jurisdiction, the court rendering the decree must first acquire personal jurisdiction over the non-resident defendant because the non-resident defendant is thereby subjected to an in personam judgment. *May v. Anderson,* 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953). In *Mitchim v. Mitchim,* 518 S.W.2d 362 (Tex.1975), the Texas Supreme Court gave full faith and credit to an Arizona alimony judgment. The court looked to see if the Arizona court had in personam jurisdiction. It held that Arizona did have jurisdiction and stated the rule to be the following:

> "Accordingly, it is our opinion that in personam jurisdiction may be acquired over a non-resident defendant in a divorce action by extraterritorial personal service of process if (1) a statute of the support ordering state has authorized the acquisition of such jurisdiction in that manner, and (2) there exists sufficient contacts between the defendant and the forum relevant to the cause of action to satisfy 'traditional notions of fair play and substantial justice.'"

This rule was followed in *Fox v. Fox,* 526 S.W.2d 180 (Tex.Civ.App. Dallas 1975, no writ). *Mitchim* supports the argument that if Texas courts must give in personam effect to sister-state judgments against Texans in "appropriate cases growing out of domestic difficulties," then it is only equitable that Texas judgments be given the same effect in other states. Sampson, *Jurisdiction In Divorce and Conservatorship Suits,* 8 Tex. Tech L.Rev. 159 at 188 (1976). This is the underlying rationale of the long-arm provisions of the Texas Family Code.

In *Scott v. Scott,* 554 S.W.2d 274 (Tex. Civ.App. Houston-1st Dist. 1977, no writ), it was decided that the parties' marital cohabitation in Texas from November 22, 1975, until February 4, 1976, brought Mrs. Scott, who moved back to California on February 4, 1976, within the Texas long-arm jurisdiction under Section 3.26(a)(1) of the Texas Family Code. Justice Peden, an eminent jurist, writing for the Houston Court of Civil Appeals, stated that in a divorce proceeding involving child support and custody the application of Section 3.26 was constitutionally limited by the due process requirements that:

> "in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"
> *Mitchim v. Mitchim,* 518 S.W.2d 362, 366 (Tex.1975).

Mrs. Scott had made a special appearance under Rule 120a, Tex.R.Civ.P., to contest the jurisdiction of the Texas court on the basis that she lacked minimum contacts with the State of Texas. She relied on the record of the California proceedings in which the California court had already issued temporary orders granting her custody and child support. The Houston Court of Civil Appeals held that while a judicial record is always admissible to prove the fact that a *judgment* has been rendered, the time of its rendition and the terms and effect of the judgment, the record may not be introduced to establish the facts on which a judgment was based. The court held that since a final decree had not been entered in California the residency question had not been finally disposed of in that state and thus California's residency determination insofar as it had been applied to the issuance of temporary orders was not entitled to full faith and credit. It was held that Mrs. Scott had failed to carry her burden of proving the lack of minimum contacts with the State of Texas and there-

fore the trial court did not abuse its discretion in overruling Mrs. Scott's plea in abatement and proceeding to enter a final divorce decree in Texas although Mrs. Scott had a similar proceeding pending in California.

■ In the present case, we are persuaded that Mr. Butler is subject to the long-arm jurisdictional provisions of Sec. 3.26 of the Texas Family Code. The evidence establishes that Mrs. Butler is a resident of the State of Texas; that she commenced her suit for divorce in Texas within a very few days after Mr. Butler left her; that Texas is the last state in which marital cohabitation between the parties occurred and that the suit was commenced within two years after the date on which cohabitation ended. We hold that since the suit was filed shortly after the cohabitation ended, the minimum contacts necessary for Texas to exercise long-arm jurisdiction over Mr. Butler were present. Mr. Butler argues that since Section 3.26 did not become effective until September 1, 1975, that it should have no application to this suit which was filed on August 22, 1975. We find this argument to be without merit because the requisites of the statute were not applied until he was served with process on June 27, 1977. The trial court did not abuse its discretion in overruling appellant's objections to the jurisdiction of the State of Texas relative to the divorce proceedings under Section 3.26 of the Texas Family Code. *Scott v. Scott, supra* ; 8 Tex. Tech L.Rev. 159, 215, supra; Rules 106(f) (Supp. 1978) and 108 (Supp. 1978), Tex.R.Civ.P.

■ The Texas Family Code long-arm jurisdictional statutes are procedural and operate retrospectively conditioned only by the requirement of meeting due process. Sections 3.26 and 11.051 apply to all cases in which the requisite minimum contacts were established prior to September 1, 1975, unless such application would constitute a denial of due process. 8 Tex. Tech L.Rev. 159, 215–216, supra; *Harrison v. Cox*, 524 S.W.2d 387 (Tex.Civ.App. Fort Worth 1975, writ ref'd n. r. e.); *Hilt v. Kirkpatrick*, 538 S.W.2d 849 (Tex.Civ.App. Waco 1976, no writ).

■ This Court is of the opinion that the trial court not only acquired jurisdiction to grant the divorce, but it also acquired jurisdiction under Section 11.051 of the Texas Family Code to determine child custody and child support. Two cases interpreting Section 11.051, which did not involve a current divorce proceeding, indicate that a greater showing of minimum contact is required under Section 11.051 as compared to Section 3.26. *Corliss v. Smith*, 560 S.W.2d 166 (Tex. Civ.App. Tyler 1977, no writ); *Zeisler v. Zeisler*, 553 S.W.2d 927 (Tex.Civ.App. Dallas 1977, writ dism'd).

■ In the present case, the children were born in Texas and lived with their mother and father in this State. The parents and children had been long time residents of Texas and it was only shortly before suit was filed in Texas that appellant Butler left with his minor daughter. This occurred following a previous separation and brief reconciliation. Under the facts here presented, we conclude that the trial court was justified in exercising jurisdiction over the parent-child relationship under Section 11.051(1) and (3) and believe that our sister states would give full faith and credit to the judgment entered and would enforce the decree if called upon to do so. 54 Texas L.Rev. 1008 (1976); 8 Tex. Tech L.Rev. 159, 206–214.

■ Our holdings may be summarized by stating that in a divorce proceeding if Texas is the last state of marital cohabitation and suit is filed within two years after the cohabitation has ended, the minimum contacts necessary for Texas to exercise long-arm jurisdiction under Section 3.26 over the nonresident defendant are present unless the non-resident proves otherwise. In a divorce case where jurisdiction over the non-resident spouse is properly based and established under Section 3.26, and if the factual proof for reliance on Section 11.051 is shown to satisfy the requirements under one of the subdivisions to Section 11.051, then separate proof of minimum contacts is not required for the court to

exercise jurisdiction over that part of the suit affecting the parent-child relationship. If the suit is not for divorce under Section 3.26, but is only a suit affecting the parent-child relationship under Section 11.051, then proof establishing one of the subdivision requirements of 11.051 is not dispositive, but requires additional proof of minimum contacts in order to satisfy due process requirements.

■ Appellant contends that the substituted service of process, executed by sending the citation by certified mail, return receipt requested, to his attorney of record in the Louisiana proceeding was not reasonably calculated to give him notice of the suit. He does not contend that he failed to receive actual notice of the suit.

Substituted service in this case on appellant's attorney outside Texas was pursuant to Tex.R.Civ.P. 108 (Supp.1978) which allows service in the same manner as resident substituted service pursuant to Tex.R.Civ.P. 106 (Supp. 1978). Rule 106, supra, provides that where it is impractical to secure personal service, then the court, upon motion, may authorize service in any other manner which will be reasonably effective to give the defendant notice of the suit. In the present case, Mrs. Butler moved for substituted service, a hearing on the motion was held, and an order was entered directing that service upon Wylie Neal Butler be had by delivering citation to his Louisiana attorney by certified mail, return receipt requested. A copy of the citation and return receipt are a part of the record.

Appellant argues that Rule 106 allows service only upon a party at his usual place of business or abode, and in no other way. This contention ignores the plain language of Rule 106(f) which allows the court to authorize service "in any other manner which will be reasonably effective to give the defendant notice of the suit." Appellant relies upon *Sindorf v. Cen-Tex Supply Co.,* 172 S.W.2d 775 (Tex.Civ.App. El Paso 1943, no writ), for the point that personal service can never be effected by service upon a person's attorney. In *Sindorf* citation was made on Kenneth Slack by deliver-ing a copy of the citation to T. F. Slack, "his attorney." *Sindorf* is not a substituted service case under Rule 106(f) and is not applicable to the present case.

We hold that the service of citation upon Wylie Neal Butler pursuant to Tex.R.Civ.P. 108 was reasonably calculated to give appellant notice of the suit and meets due process requirements.

■ Appellant specially appeared pursuant to Tex.R.Civ.P. 120a to contest the jurisdiction of the trial court. During the proceeding, appellant raised only the issue of defective service and thereby turned the special appearance into a general appearance.

The issue at a special appearance is jurisdiction, and nothing else. Thode, in his article on special appearance, explains:

"The words 'not amenable to process issued by the courts of this state' can only be interpreted to mean that the special appearance is available solely to establish that the Texas court cannot, under the federal and state constitutions and the appropriate state statutes, validly obtain jurisdiction over the person or the property of the defendant with regard to the cause of action pled. Defective service or defective process, or even an attempt to bring the defendant before the court under the wrong statute does not authorize the use of the special appearance." 42 Texas L.Rev. 279, 312 (1964).

The trial judge overruled the special appearance and found that it had jurisdiction based on Sections 3.26 and 11.051 of the Texas Family Code. Since the trial court had jurisdiction over the appellant under Sections 3.26 and 11.051 of the Texas Family Code, it was not error for the trial court to immediately proceed to trial in the absence of an answer having been filed by appellant.

■ Had there been no jurisdiction over the appellant under Sections 3.26 and 11.051 of the Texas Family Code and had appellant submitted himself to the jurisdiction of the court by turning his special appearance into a general appearance, then

**508**

it would have been error to render a default judgment before the first Monday after the expiration of twenty days. See 2 McDonald's, Texas Civil Practice, Sec. 9.05.1. The fact that appellant turned his special appearance into a general appearance in this case does not afford appellant additional time within which to file an answer. Appellant could have filed his answer along with his sworn special appearance motion under Rule 120a, supra, and have forestalled the default judgment which was taken by appellee. Since the court had jurisdiction under Sections 3.26 and 11.051 of the Texas Family Code through service of process under Tex.R.Civ.P. 108, the trial court was authorized to immediately proceed to judgment because no answer had been filed by appellant and the required time for answering had elapsed.

The evidence supports the trial court's judgment. Appellant's points of error are overruled.

The judgment of the trial court is affirmed.