379 So.2d 1153 (1980)
James M. MOORE, Plaintiff-Appellee,
v.
Tammie L. MOORE, Defendant-Appellant.
No. 14023.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1980.
Neil Martin Trichel, Shreveport, for plaintiff-appellee.
R. Clyde Lawton, Jr., Vivian, for defendant-appellant.
Before HALL, MARVIN and JONES, JJ.
JONES, Judge.
Tammie Moore, mother and plaintiff-in-rule, appeals a judgment sustaining an exception of lack of jurisdiction over the subject matter to her rule seeking a reduction of the father's visitation privileges and an increase in child support contained in a New Mexico divorce judgment. This exception was filed by James Moore, father and defendant-in-rule.
The October 18, 1978 New Mexico divorce judgment awarded custody of the three year old child born of the marriage to the mother and gave the father visitation privileges for three months each summer, every Thanksgiving and Easter, and one-half of the Christmas vacation. The judgment ordered the father to pay $95.00 per month child support. The mother filed in March, 1979 a rule to show cause why the visitation should not be reduced and the child support increased to $200.00 per month. The trial judge dismissed the rule because he found that under the Uniform Child Custody Jurisdiction Act (L.R.S. 13:1700, et seq.), hereinafter referred to as the UCCJ Act, the Louisiana court lacked jurisdiction to modify the New Mexico judgment.
The mother had left the matrimonial domicile in New Mexico with the child in July, 1978 and established a domicile with her mother in Louisiana. The child and mother had lived in Louisiana for a period of eight months at the time she filed the rule to modify the New Mexico judgment.
After a trial on the visitation and support issues the trial judge sustained the exception of jurisdiction.
The issues are (1) whether the UCCJ Act denies jurisdiction to a Louisiana court over this matter, and (2) if there is jurisdiction whether this court should change the visitation provisions and increase the child support.
The UCCJ Act went into effect on October 1, 1978. The general purposes of the Act are to avoid jurisdictional disputes with courts of other states in matters of child custody and to assure that child custody litigation takes place in the state with the *1154 closest connection to and most substantial evidence about the child and its family. LSA-R.S. 13:1700(A). The basic goals of the Act do not appear to vitiate completely the broad grant of jurisdiction by LSA-C. C.P. Art. 10(A)(5)[1] over the status of the custody of a minor who is domiciled in, or is in, this state except in certain particular circumstances. See LSA-R.S. 13:1705 (simultaneous proceedings in other states); 13:1706 (forum non conveniens); 13:1707 (jurisdiction declined because of a wrongful taking of the child); and 13:1713 (no modification of another state's custody decree unless the other state no longer has jurisdiction or has declined jurisdiction). The Oregon Supreme Court in Settle v. Settle, 276 Or. 759, 770, 556 P.2d 962, 968 (1976), makes the following observation concerning the purpose of the UCCJ Act which had been adopted by Oregon:
"A close reading of the Act discloses a schizophrenic attempt to bring about an orderly system of decision and at the same time to protect the best interests of the children who may be immediately before the court. When put to the test of a factual situation presenting an irreconcilable conflict between those two interests, we read the Act as making predominant the best interests of the children before the court."
Considering the Act's overriding concern with the best interests of the child now presently before the court, we find it does not deny jurisdiction to the Louisiana court but rather mandates its exercise of jurisdiction over this cause.
Louisiana has traditionally exercised its jurisdiction over the status of minors present in the state regardless of the method of their arrival here. See State ex rel. Girtman v. Ricketson, 221 La. 691, 60 So.2d 88 (1952), which holds that a Louisiana court has jurisdiction over a minor in order to determine his legal custody when the minor is domiciled in, or is in, Louisiana. The jurisprudence has interpreted the provisions of the later Art. 10(A)(5) of the Code of Civil Procedure to mean that mere physical presence without more and without regard to the means used to achieve such presence suffices to give a Louisiana court power to decide the custody of a minor. Jones v. Larkins, 347 So.2d 508 (La.App.4th Cir. 1977); Lucas v. Lucas, 195 So.2d 771 (La.App.3d Cir. 1966); Rafferty v. Rafferty, 313 So.2d 356 (La.App.4th Cir.1975); Miller v. Miller, 363 So.2d 724 (La.App.2d Cir. 1978). Even after the UCCJ Act had gone into effect, at least one Louisiana appellate court has without discussing the new Act ruled that on the basis of LSA-C.C.P. Art. 10(A)(5) a Louisiana court had jurisdiction to determine if a Virginia custody decree should be modified. Folsom v. Folsom, 372 So.2d 769 (La.App.4th Cir. 1979). Here the trial court determined the question of custody of three minors, all of whom were domiciled in Virginia, but two of whom were present in Louisiana, and one of whom was still in Virginia. The Fourth Circuit held that as to the custody determination of the child in Virginia, the trial court was without jurisdiction (basing its decision on LSA-C.C.P. Art. 10(A)(5) and Rafferty and Jones, supra.) Without considering the UCCJ Act the Fourth Circuit affirmed on the merits the trial court's decision to allow custody to remain with the mother of one of the boys who was domiciled in Virginia but was present in Louisiana. By affirming on the merits the court necessarily determined that the trial court did have jurisdiction to decide the child's custody because of Article 10(A)(5), Rafferty and Jones.
The broad custody jurisdiction granted by Art. 10(A)(5) appears to be not substantially diminished by passage of the UCCJ Act. However, it is clear from the general goals of the Act that mere physical presence without more should not now suffice to give a Louisiana court jurisdiction either to determine custody or modify a foreign custody decree. In order for a Louisiana court *1155 to have jurisdiction the home state test of R.S. 13:1702(A)(1)[2] must be met or the best interest of the child test of 1702(A)(2)[3] must be satisfied. Since the minimal requirement of physical presence has led to the very child-snatching incidents which the Act seeks to prevent, the goals of the Act, plus its jurisdictional requirements ensure that mere presence of the minor in Louisiana without more will not be enough to give a Louisiana court power to determine the custody of that minor. For a good discussion of this change in Louisiana custody jurisdiction and of the Act in general see Ann Lastilla's article in 39 Law Review, 107, Legislative Symposium, pp. 107-121.
The issue is does Louisiana have jurisdiction to modify the custody decree of New Mexico?
Under R.S. 13-1702(A)(1) of the Act, Louisiana is competent to make a child custody determination by modification because Louisiana was the child's home state at the time of commencement of the proceeding, March, 1979. "Home state" is defined in § 1701(5) as being "the state in which the child immediately preceding the time involved lived with ... a parent ... for at least six consecutive months ..." At the time the mother instituted these proceedings she and the child had been residing in Louisiana for eight months.
Since Louisiana has jurisdiction, the question then becomes whether Louisiana is precluded from exercising its jurisdiction for the purpose of modifying the New Mexico judgment.
Section 13:1713(A) deals with the modification of a custody decree of another state and provides as follows:
"If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this Part or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction."
Before Louisiana can exercise jurisdiction to modify the New Mexico custody decree, Louisiana must determine that New Mexico no longer has jurisdiction or has declined to exercise jurisdiction. As discussed in the comments to this section in Uniform Laws Annotated, Vol. 9, § 14, all petitions for modification should be made to the prior state as long as that state still has sufficient contact with the case to satisfy the jurisdictional requirements of the Act (§ 1702). In order to determine if Louisiana is precluded from exercising jurisdiction, it must be determined if New Mexico has jurisdiction under § 1702.
Since Louisiana and not New Mexico is now the child's home state New Mexico does not have jurisdiction under § 1702(A)(1). Under § 1702(A)(2) New Mexico has jurisdiction if it meets the test of the child's best interests[4]. This section requires that for the best interest test to be met New Mexico must have "a significant connection" with the child and at least one parent and have available "substantial evidence concerning the child's present or future *1156 care, protection, training, and personal relationships". The inquiries which must be made to determine if New Mexico no longer has jurisdiction are related solely to the issues "significant connection" and "substantial evidence".
Connections which the minor has with the state of New Mexico are (1) her father resides there, and (2) the child previously resided there eight months ago. We do not consider these factors alone sufficient to meet "significant connection" requirements. The only evidence available in New Mexico is that which the father may provide. The child resides with her mother and maternal grandmother and other relatives in the City of Shreveport and has been here for almost one-third of her life. Under these circumstances by far the great majority of evidence concerning this child necessarily must be available only in Shreveport, Louisiana. It therefore is evident that New Mexico is not the state where "substantial evidence" as to the welfare of the child is available. As stated in the Commissioner's comment to the jurisdictional article in Uniform Laws Annotated, Vol. 9, § 3:
"The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state. The submission of the parties to a forum, perhaps for purposes of divorce, is not sufficient without additional factors establishing closer ties with the state. Divorce jurisdiction does not necessarily include custody jurisdiction." Id. at 124.
The maximum contact intended by § 1702(A)(2) is not present between the state of New Mexico and the child in this case. Therefore, since New Mexico does not have sufficient contact with the child to satisfy the jurisdictional requirements of § 1702(A)(1) or (2), the prohibition of § 1713(A) against modification of the custody decree of another state is removed. Louisiana by virtue of its status as the child's home state [§ 1701(5)] is empowered to modify this New Mexico custody decree [§ 1702(A)(1)].
As we found no Louisiana cases construing the UCCJ Act, we were aided in our conclusions by considering the rationale of decisions of other jurisdictions which have interpreted the Uniform Child Custody Jurisdiction Act.
Baird v. Baird, 374 So.2d 60 (Fla.App.3d Dist. 1979), involved the similar issue of whether Florida has jurisdiction under the Act to modify an Arizona custody decree. Both the mother, who had been granted custody, and the child lived in Florida while the father still resided in Arizona, the former matrimonial domicile. The Act did not deny subject matter jurisdiction to Florida, but rather raised a question as to the propriety of its exercise of that jurisdiction. The Florida court found that their § 61.1328, Florida Statutes 1977 (our R.S. 13:1713) did not require Florida to decline jurisdiction because the mother and child had left Arizona and were now domiciled in Florida.
The Florida case of Hofer v. Agner, 373 So.2d 48 (Fla.App.1st Dist. 1979), applied the best interest test of our § 1702(A)(2) and found that although the children were presently domiciled in New Jersey with their mother under a valid Florida custody decree, the Florida court had significant connection with and substantial evidence about the children and was thus empowered to modify the decree when two of the children were presently before the Florida court.
The Oregon case of Settle v. Settle, supra, dealt with the issue of whether Oregon could modify an Indiana custody decree. The Indiana decree awarded custody to the father who lived in Indiana. The mother and children were domiciled in Oregon. The father sued in Oregon to enforce the Indiana decree and the issues were (1) did Oregon have jurisdiction to modify the Indiana decree? and (2) if so, should Oregon exercise this jurisdiction? Oregon, as the child's home state, had jurisdiction to modify. The Oregon court held that the prohibitory modification Article (our § 1713) did not apply because Indiana no longer had jurisdiction because it was neither the home *1157 state nor did it have significant connection with the child, nor was "substantial evidence" concerning the children available in Indiana. Indiana did not have the optimum access to relevant evidence as required by the Act and so the home state, Oregon, rather than the rendering state now had power to determine the child's custody.
When the rendering state remains either the home state or maintains both a significant connection with and substantial evidence about the child, courts in states whose legislatures have adopted the UCCJ Act have not hesitated to defer to this continuing jurisdiction. See Brown v. Distr. Court In and For City and County of Denver, 557 P.2d 384 (Colo.1976), in which the Colorado Supreme Court held that even though the mother and child were domiciled in Colorado, a Colorado court was without power to hear the mother's suit to modify the Missouri custody decree because Missouri retained continuing jurisdiction under the prerequisites of the Act. The mother's suit was filed two months after she and the child had moved from Missouri to Colorado and only three weeks after the rendition of the Missouri custody decree. See also Fry v. Ball, 544 P.2d 402 (Colo.1975), wherein a California court which rendered a custody decree in favor of a paternal grandmother was held to have retained continuing jurisdiction over the legal custody of a child living in Colorado with his grandmother when both parents resided in California.
Louisiana has jurisdiction of this cause because Louisiana is the home state of the child. New Mexico no longer has jurisdiction because it is neither the home state, nor does it have significant connections with and substantial evidence about the child. Louisiana is therefore not bound under R.S. 13:1713(A) to forsake modification of the New Mexico custody judgment.
The UCCJ Act is inapplicable to the issue of child support, R.S. 13:1701(2), and for this reason there can be no question that the trial court was not precluded from modifying the New Mexico judgment with relation to the amount of child support the father was required to pay.
We REVERSE the judgment sustaining the exception of jurisdiction and because the trial court should have an opportunity to exercise its discretion on the issue of modification of visitation rights and upon the request for an increase in the child support, we REMAND the case to the trial court for consideration on the merits.
All costs are assessed against appellee.
NOTES
[1] C.C.P. Art 10(A)"A court which is otherwise competent under the laws of this state has jurisdiction of the following actions or proceedings only under the following conditions:

. . . . .
(5) A proceeding to obtain the legal custody of a minor if he is domiciled in, or is in, this state;..."
[2] LSA-R.S. 13:1702(A)"A court of this state which is competent to decide child custody matters had jurisdiction to make a child custody determination by initial or modification decree if:

(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
[3] (2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or ..."
[4] R.S. 13:1702(A)(3) and (4) provide the other two grounds for jurisdiction (abandonment or emergency plus physical presence and lack of any other state to exercise jurisdiction) and are not applicable to this case.