399 So.2d 1231 (1981)
Johannas Justus EICKE, Plaintiff and Appellant,
v.
Elizabeth Larue EICKE, Defendant and Appellee.
No. 8135.
Court of Appeal of Louisiana, Third Circuit.
May 27, 1981.
Rehearing Denied July 8, 1981.
*1232 Nelson, Hammons & Johnson, John L. Hammons, Shreveport, for plaintiff and appellant.
Sanders & Castete, Herman Castete and Martin S. Sanders, Jr., Winnfield, for defendant and appellee.
Before CULPEPPER, DOMENGEAUX and LABORDE, JJ.
CULPEPPER, Judge.
This is a child custody case. The plaintiff father appeals from a judgment denying recognition of that portion of a Texas divorce decree which awards the father custody of the two children at issue. In a previous Louisiana judgment of separation from bed and board, custody had been awarded to the mother. We conclude that under the Uniform Child Custody Jurisdiction Act, adopted by Louisiana in 1978, the trial judge correctly refused to recognize the Texas custody decree.
The facts are that plaintiff and defendant were married in Alaska during 1974. They later moved to Texas, where the two children, now ages two years and four years respectively, were born. In about 1978, the mother and father and the two children moved to Louisiana for a short time. In April of 1979 the entire family moved back to Texas. On August 9, 1979, the mother left the father in Texas and moved with the children to LaSalle Parish, Louisiana, where they have since lived near her mother. On October 26, 1979, the mother filed suit in LaSalle Parish for separation from bed and board and for custody of the children. An attorney was appointed to represent the absent husband, who was in Texas. On December 14, 1979, the district court for LaSalle Parish rendered judgment granting the mother a separation and custody of the children.
On June 18, 1960, the father obtained from the district of Lubbock County, Texas a judgment granting him a divorce and custody of the two children, who were then still residing with their mother in Louisiana. The mother had been served with *1233 notice of the Texas proceedings but made no personal appearance therein.
On July 17, 1980, the father filed the present suit in LaSalle Parish, Louisiana for recognition of the Texas divorce and custody decree. The mother answered, alleging the father's Texas divorce and custody decree were invalid for lack of jurisdiction in the Texas court. Moreover, as to the Texas custody decree, the mother alleged it was invalid because of the prior Louisiana decree granting her custody.
The district court rendered judgment recognizing the Texas divorce but refusing to recognize the Texas custody decree. The trial judge reasoned that the Uniform Child Custody Jurisdiction Act, which was adopted by Louisiana in 1978 but has not been adopted in Texas, has changed the prior Louisiana jurisprudence regarding recognition of foreign custody decrees. We agree.
Prior to the adoption by Louisiana of the Uniform Child Custody Jurisdiction Act, our jurisprudence had established the rule that a judgment of divorce, whether rendered in this state or in a foreign state with jurisdiction, abates a prior judgment of separation in this state and all matters incidental thereto including custody decrees. Fountain v. Fountain, 365 So.2d 1139 (La. App. 3rd Cir. 1978); Webster v. Webster, 308 So.2d 302 (La.App. 1st Cir. 1975); Hill v. Hill, 304 So.2d 922 (La.App. 1st Cir. 1974); Emery v. Emery, 223 So.2d 680 (La. App. 4th Cir. 1969). Jurisprudence had also established the rule that a divorce decree and a custody decree incidental thereto rendered in a sister state with jurisdiction is entitled to full faith and credit in Louisiana. Fountain v. Fountain, supra; Webster v. Webster, supra; Hill v. Hill, supra; and Emery v. Emery, supra.
If these jurisprudential rules are still controlling, the district judge in the present case erred in not recognizing the Texas custody decree, since the record clearly shows the Texas court had jurisdiction of the custody of the children under the Texas law. Counsel for the father cited in his brief provisions of the Texas Family Code Annotated, Sec. 11.051, which states that Texas has jurisdiction of custody disputes where the child was conceived in Texas or the person on whom service is required has resided in Texas with the child. Also cited is Butler v. Butler, 577 S.W.2d 501 (Ct. of Civ.App. of Tex.1978) which holds that where Texas was the last matrimonial domicile between the parents and suit was commenced within two years after co-habitation in Texas ended, the minimum contacts necessary for Texas jurisdiction under its long-arm statutes are satisfied. Thus, Texas had jurisdiction under its laws. Likewise, there is no question that the Louisiana court had jurisdiction under its laws to render the judgment of separation and custody decree in 1979. The mother was then domiciled in Louisiana and the children lived with her.
Under the jurisprudential rules stated above, the Texas custody decree is entitled to recognition unless these rules were changed by the Uniform Child Custody Jurisdiction Act. The precise issue presented is whether, under the Uniform Act, Louisiana is required to recognize an out-of-state custody decree rendered in a divorce proceedings, where the foreign custody decree is in conflict with a custody decree rendered in previous separation proceedings in Louisiana. We find no Louisiana case addressing this particular question. However, in the recent case of Revere v. Revere, 389 So.2d 1277 (La.1980), our Supreme Court explained the purposes of the Uniform Child Custody Jurisdiction Act. In Revere, the matrimonial domicile was in Louisiana. The mother abandoned the father and child and moved to Texas. The father obtained a judgment of separation and later a judgment of divorce in Louisiana awarding him custody. The father lived in Louisiana with his parents who helped him take care of the child. The father was killed, giving rise to a claim by the child for his wrongful death in Louisiana. After the father's death, the mother came to Louisiana and took physical control of the child from the paternal grandparents and obtained an ex parte custody order in Louisiana. The mother took the child back to Texas where she had remarried. *1234 After the child had been in Texas about six months, the paternal grandparents filed in Louisiana a rule to change custody to them, alleging the mother's unfitness and forfeiture of parental rights. The mother excepted to the Louisiana court's jurisdiction. Our Supreme Court held that the Louisiana court had jurisdiction under the Uniform Child Custody Jurisdiction Law, both because Louisiana was the child's "home state", within the meaning of LSAR.S. 13:1702 A(1), and because the child and the persons seeking custody had significant connections with this state and there was available in this state substantial evidence concerning the child's present or future care, LSAR.S. 13:1702 A(2). In discussion the general purposes of the Uniform Act, the court states:
"The Uniform Child Custody Jurisdiction Law was proposed in an effort to have states impose uniform legislative rules on themselves regarding jurisdiction in child custody cases. A custody decree in one state is subject to modification not only by the courts of that state, but also by the courts of another state, since the Full Faith and Credit clause has limited application in custody cases. New York ex rel. Halvey v. Halvey, 330 U.S. 610 [67 S.Ct. 903, 91 L.Ed. 1133] (1947). In an age of fluid population trends many cases are presented in which jurisdiction may be concurrent in several states. In order to provide some stability to reasoned custody decrees by discouraging relitigation, to deter custody determinations by physical abduction, to avoid jurisdictional competition and conflicting custody decrees in several states, and primarily to attain the security of home environment necessary for a child's well being, the National Conference of Commissioners proposed the uniform law adopted in Louisiana by Act 513 of 1978. See R.S. 13:1700. At that time numerous other states had adopted the uniform law."
In Revere, the Supreme Court made the following statement which has particular application to the present case:
"It is evident that jurisdiction may exist in two different states under the home state and significant connection standards. When this occurs, it is not necessary that the significant connection state defer in every case to the home state.3 The conflict is avoided by reference to priority of filing (see R.S. 13:1705), which requires a court with jurisdiction under the uniform law to defer to the court of another state with uniform law jurisdiction when the first proceeding was filed in the latter state) and to factors indicating Louisiana is an inconvenient forum (see R.S. 13:1706, which encourages judicial restraint when another state with jurisdiction under the uniform law appears to be in a better position to determine custody).
"3 Texas has not enacted the uniform law. The act, however, is not a reciprocal act, and by adopting the uniform law, Louisiana has obligated itself to adhere to the terms of the act even though the other concerned state has not done so."
Revere, supra, is similar to the present case in that both Texas and Louisiana had jurisdiction, but the present case differs from Revere in that here custody decrees have been rendered in both states, first in Louisiana and then in Texas, whereas in Revere the only custody proceedings filed were in Louisiana.
Before discussing the conflicting custody decrees from Texas and from Louisiana, we note that LSAR.S. 13:1701(4) defines a "custody decree" as a "custody determination contained in a judicial decree or order made in a custody proceeding, and includes an initial decree and a modification decree." Section 1701(3) defines a "custody proceeding" as including a proceeding "in which a custody determination is one of several issues, such as an action for divorce or separation." Thus, insofar as custody decrees are concerned, the prior jurisprudential rule, cited above, that a judgment of divorce abates a prior judgment of separation and all matters incidental thereto, including custody decrees, is changed by the Uniform Child Custody Jurisdiction Act. Under the Uniform Act, the Louisiana *1235 court which renders a custody decree in a separation proceedings need not necessarily defer to a subsequent custody decree rendered in a divorce proceedings in another state.
In Revere, supra, our Supreme Court points out that the Uniform Law seeks to solve the problem of conflicting custody decrees from different states, both of which have jurisdiction. The court notes LSA R.S. 13:1705 which provides:
"§ 1705. Simultaneous proceedings in other states
A. A court of this state shall not exercise its jurisdiction under this Act if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this Part, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.
B. Before hearing the petition in a custody proceeding the court shall examine the pleadings and other information supplied by the parties under Section 1708 and shall consult the child custody registry established under Section 1715 concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state it shall direct an inquiry to the state court administrator or other appropriate official of the other state.
C. If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with Sections 1718 through 1721. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.
Added by Acts 1978, No. 513, § 1, eff. Oct. 1. 1978."
Of particular relevance to the issue in the present case are the provisions of LSA R.S. 13:1712 which state:
"§ 1712. Recognition of out-of-state custody decrees
The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this Part or which was made under factual circumstances meeting the jurisdictional standards of the Part, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this Act."
Under LSAR.S. 13:1712, quoted above, the courts of Louisiana must recognize an initial or modification decree of a court of another state "which had assumed jurisdiction under statutory provisions substantially in accordance with this part (meaning the Uniform Law) or which was made under factual circumstances meeting the jurisdictional standards of the part." As stated above, Texas has not adopted the Uniform Law. If the Uniform Law had been in effect in Texas at the time the father sought custody there, the Texas court would have been bound to follow the procedures set out in LSAR.S. 13:1705, quoted above, and also to follow generally the provisions of Sections 1706-1710. This means that the Texas court should have discovered the existing custody decree rendered in Louisiana about six months previously, should have obtained a copy of the proceedings in Louisiana and other information supplied by the parties, should have informed the Louisiana courts of the institution of custody proceedings in Texas, and, in general, should have cooperated with the Louisiana court in determining the most *1236 convenient forum for gathering evidence and the court best suited to decide the custody dispute. Insofar as the record before us shows, the Texas court did none of the these things. Therefore, the Texas custody decree was not rendered substantially in accordance with the provisions of the Uniform Law and need not necessarily be recognized by the courts of Louisiana. LSA R.S. 13:172.
Moore v. Moore, 379 So.2d 1153 (La.App. 2nd Cir. 1980), involved the Uniform Law, but not the precise issue presented here. In Moore a mother divorced under a New Mexico judgment sought in a Louisiana court reduction of the father's visitation rights granted in the New Mexico decree. The district court in Louisiana sustained the father's exception to the jurisdiction. The Second Circuit Court of Appeal held that Louisiana had jurisdiction to modify the New Mexico decree, where the child and the mother resided in Louisiana and the only remaining connection of the parties with New Mexico was the father's residence there. The question in Moore was simply whether Louisiana had jurisdiction to modify the New Mexico decree. Clearly, the Louisiana court did have such jurisdiction, as all custody decrees are always subject to modification because of changed circumstances. See Revere, supra. However, the court in Moore discussed generally the purposes and rationale of the Uniform Act, in much the same manner as set forth by the Supreme Court in Revere. See also the Legislative Symposium, 39 L.Law Rev. 107, which discusses generally the provisions of the Uniform Act.
Looking at the present case generally, in light of the purposes of the Uniform Law, it would clearly be contrary to the spirit of the act to allow the father to go into a Texas court and obtain a custody decree, where the mother and children were living in Louisiana and the Louisiana court had already rendered a decree giving custody to the mother. The action by the father in obtaining the Texas decree resulted in precisely the kind of conflict between custody decrees of different states which the Uniform Act seeks to suppress.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff-appellant.
AFFIRMED.
LABORDE, J., dissents and assigns written reasons.
LABORDE, Judge, dissenting.
I disagree that this is a child custody case involving application of the Uniform Child Custody Jurisdiction Act. It is instead a pure full faith and credit case posing the issue of whether Louisiana must recognize and give effect to the custody portion of a Texas judgment of divorce. Under Art. 4, Sec. 1 of our United States Constitution, I am convinced that we must.
Plaintiff-father filed this suit to have a Texas judgment awarding him custody of his two children recognized and made executory in Louisiana. The defendant-mother answered and reconvened arguing invalidity of the judgment based on the Texas court's lack of jurisdiction. From a decision in favor of the mother, the father appeals.
The facts are sufficiently set forth in the majority opinion.
As stated above, the only issue presented on appeal is whether Louisiana must give full faith and credit to the custody portion of the Texas decree.
The United States Constitution mandates that the courts of Louisiana shall give full faith and credit to judgments of the courts of our sister states unless it is shown that the rendering court lacked jurisdiction over the subject matter or parties of the litigation. U.S.C.A.Const. Art. 4, Sec. 1; LSA-C.C.P. Art. 1; Magnolia Petroleum Company v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943); Holden v. Holden, 374 So.2d 749 (La.App. 3rd Cir. 1979). The result is that in a proceeding for the recognition of a foreign judgment, the only issue which a Louisiana court may concern itself with is whether or not the foreign court had jurisdiction to make such an award. Williams v. State of North Carolina, 325 U.S. 226, 65 *1237 S.Ct. 1092, 89 L.Ed. 1577 (1945); Holden v. Holden, supra. If it did, Louisiana is without power or discretion to deny giving the foreign judgment full faith and credit.
There is a presumption that a court of a sister state had jurisdiction sufficient to render judgment in a case before it and the assailant of the judgment bears the heavy burden of proving otherwise. Berry v. Berry, 307 So.2d 821 (La.App. 3rd Cir. 1975); Holden v. Holden, supra. The burden to establish that the foreign court was without jurisdiction can only be discharged by clear and positive proof. Turpin v. Turpin, 175 So.2d 357 (La.App. 2nd Cir. 1965); Holden v. Holden, supra.
The defendant, Elizabeth Eicke, attacks the judgment in the present case and she bears the burden of proving, by clear and positive evidence, that the Texas court lacked jurisdiction when it rendered the custody award. The law utilized to determine whether the foreign court had jurisdiction is the law of the foreign state rendering the judgment. Fountain v. Fountain, 365 So.2d 1139 (La.App. 3rd Cir. 1978).
The attorney for Johannas, in brief, offered the following law and jurisprudence regarding jurisdiction over custody matters in Texas courts:
"With regard to the statutory authority for the Texas court to obtain jurisdiction over the parties, it is shown that the Texas Family Code Annotated Section 11.051 provides in pertinent part:
In a suit affecting the parent-child relationship, the court may exercise personal jurisdiction over the person's personal representative, although the person is not a resident or domiciliary of this State if:
(1) the child was conceived in this State and the person on whom service is required is a parent or an alleged or probable father of the child;
(2) the child resides in this State as defined by Section 11.04 of this code, as a result of the acts or directives or with the approval of the person on whom service is required;
(3) the person on whom service is required has resided with the child in this State; or
(4) notwithstanding Subdivisions (1), (2), or (3) above, there is any basis consistent with the Constitution of this State or of the United States for the exercise of personal jurisdiction.
In Butler v. Butler, 577 S.W.2d 501 (Court of Civil Appeals of Texas, 1978), the court held that where Texas was the last state in which marital cohabitation between the parties occurred and suit was commenced within two years after the date on which cohabitation ended, minimum contacts necessary for Texas to exercise long-arm jurisdiction over the husband were present and where the parents and the child had been long-time residents of Texas and it was only shortly before suit was filed that the husband left with the minor daughter, the Texas court was justified in exercising long-arm jurisdiction and substituted service on the husband's attorney outside the state by certified mail with a return receipt requested and this was reasonably calculated to give the husband notice of the suit and satisfied all due process requirements." (Appellant's Brief pp. 11-12)
By way of contrast, attorney for Mrs. Eicke failed, at trial and on appeal, to introduce any evidence of the law of Texas with respect to jurisdiction over custody matters.
In addition to the law and jurisprudence cited by Johannas and the lack of any citation on the part of Mrs. Eicke, the Texas court in its judgment, specifically stated:
"... after examining the pleadings and listening to the evidence and argument of counsel, (the Court) finds it has jurisdiction over the cause and the parties..."
Upon review, the record supports that the Texas court had jurisdiction to determine custody under several of the sections of its law and also under the jurisprudence cited above, a fact not disputed by the majority who concedes that "the record clearly shows the Texas court had jurisdiction of the custody of the children under the Texas law." Under our constitution, after finding that the rendering court had jurisdiction, the *1238 limited inquiry permitted must end and the judgment is entitled to full faith and credit, period.
The majority, ignoring the reality of the valid Texas judgment, errs by failing to acknowledge that this is a full faith and credit case and by failing to restrain itself accordingly. Instead, the majority proceeds to treat the case as one involving application of the Uniform Child Custody Jurisdiction Act which Louisiana, but not Texas, has adopted. Upon review, the majority concludes "looking at the present case generally, in light of the purposes of the uniform law, it would clearly be contrary to the spirit of the act to allow the father to go into a Texas court and obtain a custody decree, where the mother and children were living in Louisiana and the Louisiana Court had already rendered a decree giving custody to the mother." In support of its position, the majority cites the Revere case. Revere is inapplicable for the simple reason that it was not a full faith and credit case.
In conclusion, I am not convinced that Louisiana, by adopting the Uniform Child Custody Jurisdiction Act may effectively "amend" the full faith and credit clause of the United States Constitution.
For the foregoing reasons, I respectfully dissent.