THIBODEAUX, Judge.
Defendant, Dalia Maria Castillo, appeals a judgment of the trial court in favor of Martha Napier Parker, granting Martha permanent care, custody and control of Dana Rachel Castillo, the minor child of Dalia Castillo and Anthony Dwayne Castillo. For the reasons stated below, we reverse on jurisdictional grounds.
*240 FACTS
At the age of seventeen, Dalia Maria Castillo married Anthony Castillo. The couple established their matrimonial domicile in Pineland, Sabine County, Texas. Of this marriage two children were born. Dana Rachel Castillo was born on June 21, 1987. On or about January 24, 1988, Dalia and Anthony separated. Anthony resides primarily and is domiciled with his mother in Pineland, Texas. Dalia’s place of domicile is also Pineland, Texas at her mother’s home. Thus, the two grandmothers and the legal parents of Dana are domiciled in Texas.
After the separation, Dalia retained physical custody of both Dana and Monica and remained in the home of her mother, Julia Vasquez. The plaintiff-appellee, Martha Napier Parker, is Anthony’s aunt and the paternal great aunt of Dana. Martha is a resident and domiciliary of Zwolle, Sabine Parish, Louisiana.
Because of lack of support from Anthony and her limited marketable job skills, Dalia applied and received approval for housing in a low rent apartment complex in Pine-land, Texas. Subsequently, she began receiving public assistance in the form of Aid to Families with Dependent Children and food stamps as well as the rent-subsidized apartment where she and her two children lived.
In June of 1988, Dalia Castillo applied, was admitted and enrolled in a business college located in Nachodoches, Texas which required her to commute from Pine-land, Texas five days a week. Because she needed help to care for her two children, she requested the assistance of her mother, Julia Vasquez, and Anthony’s aunt, Martha Parker. Temporary arrangements were made. Julia cared for Monica, the youngest child, in her home during the day and Martha caring for Dana, the oldest child, in her home during the entire week with Dalia picking her up from Louisiana and bringing Dana back to Pineland, Texas on the weekends. Pineland, Texas is approximately 30 to 40 miles away from Martha Parker’s home.
Dana had been a frequent guest of Martha Parker from the time of her infancy, often staying weekends to three days at a time during Dalia and Anthony’s marriage. Both Dalia and Anthony would return and take Dana back to Pineland, Texas.
The daily expenses of commuting from Pineland to Nachodoches, Texas became a burden on Dalia and after one week of attending the business college, she dropped out. Accompanied by members of her family, Dalia went to Martha Parker’s home in Zwolle, Louisiana to take Dana back to Pineland. At this time, Dalia was told that she could not take Dana. Dalia testified that she was turned away on several other occasions by Martha’s daughter, Kelly. Anthony resided with Martha either in her house or in the house next door that at one time belonged to his mother, Betty Castillo, for several months after he and Dalia separated. However, Anthony eventually moved back to the home of his mother in Pineland, Texas. Dalia testified that the reason she did not push harder for physical custody of Dana at that time was because Anthony was living there and he is Dana’s father. Dalia further testified that she believed that Anthony was supporting and taking care of Dana. Dalia felt that at all times she considered Dana’s living arrangement with Martha to be temporary.
After the incident in June of 1988, Dalia moved to Kingsville, Texas and obtained employment at a bakery while living with relatives there. After two months, she moved back to Pineland, Texas and again survived on public assistance due to lack of support from Anthony. After moving back to Pineland, Dalia went to Zwolle, Louisiana to visit with Dana but always in the company of Anthony or his mother, Betty. Dalia alleged that Anthony threatened to help Martha obtain custody of Dana if she tried to take Dana away.
Dalia attempted to find employment in various cities in Texas 'but was unsuccessful. On April 16,1989, Dalia enlisted in the Army for a four year tour of duty. October 27, 1989 was the first time Dalia had leave after completing Basic Training and Advanced Individual Training. She was on *241 leave for two weeks. With the help of Anthony, Dalia was able to obtain physical custody of Dana for part of that leave time. There is conflicting evidence in the record as to the reason Dana ended up back in Zwolle, Louisiana before Dalia’s leave expired. Dalia claimed that while she was gone, Martha’s daughters came to Pine-land, Texas and took Dana away. Martha claims that Dalia called her to take Dana because she was crying all the time. In the meantime, the marriage of Martha Parker and her husband, William Parker, ended upon his leaving to live with another woman on August 27, 1989.
Following her leave, Dalia was assigned to serve in Germany and arrived there on November 10, 1989. However, while home on leave, Dalia had tried to convince Anthony to go to Germany with her and to bring the children but he refused and, she claims, further threatened to take both children away if she tried to take either or both of them to Germany.
Since she and Anthony were unable to reconcile, Dalia filed for divorce on July 12, 1990 in Sabine County, Texas in which she also sought division of community property and custody of both Dana and Monica.
On September 5, 1990, Dalia returned to Pineland, Texas, on leave from her duty in Germany, due to her scheduled trial date. Dalia testified that she expected to obtain a divorce from Anthony and custody of her children on that date. However, Anthony had obtained an attorney and on September 14, 1990 he filed an answer and counterclaim for divorce and custody which caused a postponement of the trial and prevented Dalia from obtaining the divorce and custody before expiration of that leave period.
Meanwhile, in Sabine Parish, Louisiana, Martha Parker filed a lawsuit seeking to obtain custody of Dana on September 13, 1990. The allegations of Martha Parker’s lawsuit included the fact that Anthony and Dalia were seeking a .divorce and were domiciled in Pineland, Texas.
Dalia returned to Germany on October 5, 1990 before a new trial date had been scheduled. Dalia remained in Germany until April 24, 1991 when she was granted leave due to the death of her grandfather in Texas. At this time, Dalia had no knowledge of Martha’s lawsuit in Louisiana. Judgment granting Martha Parker the care, custody and control of Dana Castillo was rendered on November 13, 1990 with written judgment being signed on December 18, 1990.
Anthony did not appear at the custody hearing. Martha testified that she did not know how to contact Dalia. However, in the later suit brought by Dalia to annul the custody judgment in Louisiana, it was established that Martha did know how to contact Dalia.
Dalia returned to Texas on April 24,1991 and was granted a permissive temporary assignment to Fort Polk in Louisiana because her new trial date had been set for May 24, 1991. Dalia’s permissive temporary assignment received several extensions due to the continual changes in the trial date because of Anthony’s failure to cooperate with his attorney who eventually withdrew his representation of Anthony. Finally, on June 14, 1991, Dalia was granted a divorce as well as the permanent custody of both children in Sabine County, Texas.
On May 24, 1991, Anthony told Dalia about Martha’s custody judgment obtained in Louisiana. Dalia then acquired a copy of the custody petition, judgment and other pleadings and began seeking legal counsel. On June 13, 1991, Dalia filed a petition in Louisiana to have Martha’s custody judgment declared null and void, raised jurisdictional issues under the Uniform Child Custody Jurisdiction Law, LSA-R.S. 13:1700 et seq., and filed declinatory and peremptory exceptions of lis pendens, no cause of action, no right of action, and res judicata. After trial, on July 15, 1991, on the aforementioned petition and demand for nullity of the Sabine Parish custody judgment, the court declared that the judgment awarding custody of Dana to Martha Parker in Sabine Parish, Louisiana was null and void with no effect, as if it had never been rendered, and set it aside.
The case was then tried on the original petition of Martha Parker for custody *242 where Anthony, father of Dana and recently divorced husband of Dalia, made no appearance. Before proceeding with the custody trial, the court overruled all of Dalia’s exceptions. Dalia’s answer to the Louisiana custody petition also raised jurisdictional issues. The trial judge heard the custody case on July 19, 1991 and rendered judgment against Dalia Castillo, granting to Martha Napier Parker the permanent and sole care, custody and control of the minor child, Dana Rachel Castillo, subject to reasonable rights of visitation to Dalia Castillo.
ISSUES
The issues are: (1) whether the Uniform Child Custody Jurisdiction Law denies the exercise of jurisdiction to a Louisiana court over this matter; and, (2) if there is jurisdiction, whether the trial court should have awarded custody of the minor child to Da-lia, the natural parent as opposed to Martha, her paternal great aunt.
LAW AND DISCUSSION
We first consider whether Louisiana has jurisdiction to modify the earlier custody decree of Sabine County, Texas. The Texas judgment was granted on June 14, 1991 and before judgment granting custody to Martha Parker was rendered.
The Uniform Child Custody Jurisdiction Law, LSA-R.S. 13:1700 et seq., was proposed in an effort to have states impose uniform legislative rules regarding jurisdiction in child custody cases. As stated in Revere v. Revere, 389 So.2d 1277 (La.1980):
A custody decree in one state is subject to modification not only by the courts of that state, but also by the courts of another state, since the Full, Faith and Credit Clause has limited application in custody cases.
The Uniform Child Custody Jurisdiction Act (UCCJA) has been adopted in Louisiana and Texas. The UCCJA seeks to avoid jurisdictional competition in conflicts, to promote interstate cooperation, to litigate custody where the child and family have the closest connections, to discourage continuing conflict over custody, to deter abduction and unilateral removal of children, to avoid re-litigation of another state’s custody decisions, and to promote exchange of information and other mutual assistance in custody matters by courts in different states. LSA-R.S. 13:1700; Miller v. Miller, 463 So.2d 939 (La.App. 2d Cir.1985).
Consistent with the goal of avoiding relit-igation of custody decisions of other states, R.S. 13:1712 provides that the courts of Louisiana shall recognize and enforce an initial or modification decree of a court of another state which has assumed jurisdictional power either under statutory provisions that are in substantial accord with § 1702 or under factual circumstances meeting the standards of § 1702. Miller, supra.
Here, a Texas court rendered the custody judgment in favor of the mother, Dalia Castillo, and against the father, Anthony Castillo. When the Texas proceedings were instituted and when judgment was rendered, Texas had been the state with significant connections to the child and parents since the father lived in Pineland, Texas had been the state with significant connections to the child and parents since the father lived in Pineland, Texas and the mother, although a member of the United States Army, maintained her permanent residence in Pineland, Texas. The child’s maternal and paternal grandmothers live in Texas as well as the child’s younger full sister, Monica. Because Dalia testified that while she was stationed in Germany, Dana would either reside with Julia Vasquez, Dalia’s mother, in Pineland, Texas or live with her in Germany, evidence concerning the child’s future care, protection, training, and personal relationships are available in Texas. The younger sister was already residing with Anthony’s mother in Texas. Both parents who would presumably be involved in rearing Dana Castillo also were residing and domiciled in Texas. Thus, the Texas judgment was in accord with the jurisdictional prerequisites of the UCCJ laws, § 1702 A(2).
Although the child was physically within the state of Louisiana, the mother continued to maintain her permanent domicile in *243 Pineland, Texas as well as the father. There was testimony that the only reason Dana remained in Louisiana was due to threats made by Anthony to Dalia that, should she attempt to physically remove Dana from Louisiana, he would see to it that she never saw the child again. Our reading of the record indicates that at all times, Dalia considered the living arrangement a temporary solution to her earlier financial instability.
Miller, supra, further establishes:
When a court of another state has rendered a custody decree in accordance with the UCCJA, there are limited exceptions under the UCCJA that allow the courts of another state to exercise jurisdiction to modify that custody judgment. Specifically, the court of the state that rendered the initial decree must no longer have jurisdiction and the courts of this state must meet the jurisdictional prerequisites and standards of § 1702.
LSA-R.S. 13:1712 and 1713 address the issues concerning recognition of out-of-state custody decrees and modification of custody decrees of another state respectively. Pursuant to Section 1712, a Louisiana state court shall recognize and enforce an initial or modification decree of a court of another state which, at the time of rendering the decree, assumed jurisdiction under statutory provisions substantially in accordance with this Part. Section 1713 allows a Louisiana state court to modify a custody decree of another state if the court of the state which rendered the initial decree no longer has jurisdiction and if the Louisiana state court, which seeks to modify the decree, meets the jurisdictional requirements and standards of § 1702. The trial judge, in his written reasons for judgment granting custody of Dana to Martha Parker, did not address the jurisdictional issue and we find it necessary to do so here.
Since the original Louisiana state court custody decree signed on December 18, 1990, granting custody of Dana Castillo to Martha Parker, was declared null and void with the same effect as if it had never been rendered, the Texas divorce and custody decree filed in July of 1990 and rendered in Dalia Castillo’s favor on June 14, 1991 is effective. Thus, the issue becomes whether Louisiana has jurisdiction to modify the custody decree of Texas.
The broad custody jurisdiction granted by LSA-C.C.P. Art. 10(A)(5) is not substantially diminished by passage of the UCCJ laws. Moore v. Moore, 379 So.2d 1153 (La.App. 2d Cir.1980). However, it is clear from the general goals of the UCCJ laws that mere physical presence without more should not suffice to accord jurisdiction to a Louisiana court to modify another state’s custody decree. Moore, supra.
Under LSA-R.S. 13:1702 A(l), Louisiana is competent to make a child custody determination by modification because Louisiana was the child’s “home state” at the time of the commencement of the proceedings. “Home State” is defined in § 1701(5) as being:
“the state in which the child immediately preceding the time involved lived with his ... a person acting as parent for at least six consecutive months ... periods of temporary absence ... are counted as part of the six month period.”
At the time that Martha Parker instituted the custody suit, Dana had been residing in Louisiana for approximately two years.
Since Louisiana has jurisdiction, the question then becomes whether Louisiana is precluded from exercising its jurisdiction for the purpose of modifying the Texas judgment. As stated earlier, before Louisiana can exercise jurisdiction to modify the Texas custody decree, Louisiana must determine that Texas no longer has jurisdiction or has declined to exercise jurisdiction. All petitions for modification should be made to the prior state as long as that state still has sufficient contact with the case to satisfy the jurisdictional requirements of the UCCJ laws. Moore, supra. In order to determine if Louisiana is precluded from exercising jurisdiction, it must be determined if Texas has jurisdiction under § 1702.
Since Louisiana is now the child’s home state, Texas does not have jurisdiction under § 1702 A(l). Under § 1702 A(2), Texas has jurisdiction if it meets the test of the *244 child’s best interest. This section requires that for the best interest test to be met, Texas must have a “significant connection” with the child, have at least one parent or contestant residing there, and have available “substantial evidence concerning the child’s present or future care, protection, training, and personal relationships.”
As noted by the Louisiana Supreme Court in Revere v. Revere, 389 So.2d 1277 (La.1980), the significant connection standard is more flexible than the home state standard. It is based on the strong contacts of children and the contestant with the state where the proceeding is brought. The standard affords a “best interest” basis for jurisdiction when the state has a legitimate concern as to the custody of the child and enjoys superior access to evidence concerning the child’s care, training, well-being and personal relationships. See also, Snider v. Snider, 474 So.2d 1374 (La.App. 2d Cir.1985), Schroth v. Schroth, 449 So.2d 640 (La.App. 4th Cir.1984).
Connections which the minor has with the state of Texas are: (1) her mother, although a member of the United States Army, is a domiciliary of Texas; (2) her father resides there; (3) her younger sister and maternal and paternal grandmothers reside there; (4) she was born there; (5) her other close relatives, such as aunts, and uncles, reside there; (6) she was frequently taken to Texas to visit her relatives there; (7) allotment checks deducted from her mother’s military pay are mailed to the homes of the two grandmothers in Texas; and, (8) both parents of the child, in the mother’s petition, state the child’s residence as Pineland, Texas. We consider these factors sufficient to meet “significant connections” requirements. The only evidence available in Louisiana is that which the child’s maternal great aunt and second cousins may provide. Under these circumstances, the overwhelming majority of evidence concerning this child necessarily must be available in Pineland, Texas.
The maximum contact intended by § 1702 A(2) is present between the state of Texas and the child in this case. Therefore, since Texas does have sufficient contact with the child to satisfy the jurisdictional requirements of § 1702 A(2), the prohibition of § 1713A against modification of the custody decree of another state attaches. When the rendering state remains either the home state or maintains both a significant connection with and substantial evidence about the child, courts in states whose legislatures have adopted the Uniform Child Custody Jurisdiction Act have not hesitated to defer to the continuing jurisdiction of the state of rendition, Moore, supra. This conclusion is even more strongly buttressed by the language of § 1705A:
“A court of this state shall not exercise its jurisdiction under this Part if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this Part....” (emphasis supplied).
CONCLUSION
We conclude that Louisiana cannot exercise its jurisdiction over these proceedings. Texas continues to have jurisdiction because it does have significant connections with and substantial evidence about the child. Louisiana is therefore bound under LSA-R.S. 13:1705A and 13:1713A to decline jurisdiction and forsake modification of the Texas custody judgment. Because this conclusion is dispositive of the case, we need not address the correctness of the trial court grant of custody to Martha Parker.
For the foregoing reasons, the judgment of the district court is reversed and, it is now ordered, adjudged and decreed that plaintiff's suit be dismissed at her costs. Costs of this appeal are assessed against plaintiff-appellee.
REVERSED.